UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

ANGEL GUANCE,

                Defendant.

---

No. 17-CR-123 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Angel Guance's motion for compassionate release based on the COVID-19 pandemic.  (Dkt. no. 837). The Government opposed the motion, (dkt. no. 841), and Defendant did not file a reply.  For the reasons set out below, the motion is DENIED.

### I. Background

    Defendant was a member of "075," a violent gang of drug dealers that controlled the area around Weeks Avenue in the Bronx.  (See Final Presentence Investigation Report ("PSR"), dkt. no. 335, at ¶¶ 11-17, 72.)  He had moved to New York from Florida in about 2015, by which time he had sustained two arrests in Florida for offenses including vehicle theft, home invasion with a firearm, and possession of cocaine with intent to sell.  (Id. ¶¶ 72, 115-16.)  In New York, Defendant continued his involvement in the drug trade and sold crack primarily for Rafael Romero, second in command to 075 gang leader Edwin Romero, and Elimanuel Diaz around Weeks Avenue, East 175th

1

Street and the Grand Concourse.  (Id. ¶¶ 11-17, 72.)  During this time, Defendant pleaded guilty to selling crack and was sentenced to five years' probation.  (Id. ¶¶ 72, 110.)  Despite his probation, he continued to sell drugs with 075 members. (Id. ¶ 72.)

As set out at length in the PSR, 075 members had access to communal firearms to protect their turf, combat rival gangs, commit robberies, and otherwise sow violence throughout the neighborhood.  (Id. ¶¶ 16-17, 72.)  For example, over a few months in 2016, two children were shot and suffered nearly fatal injuries, a robbery victim was stomped and then shot three times, Edwin Romero was shot multiple times, and Jose Morales was executed by rival drug dealers.  (Id.)

Defendant was charged with conspiring to distribute and possess with intent to distribute 280 grams and more of crack and quantities of heroin, cocaine, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and using, carrying, possessing, brandishing, and discharging firearms, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and (iii).  (Id. ¶¶ 2, 4.)  He pleaded guilty to conspiring to distribute crack, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).  (Id. ¶¶ 7, 98.)  The parties agreed that the Guidelines range was 51-63 months, based on a Total Offense level of 23 and a Criminal History Category of II.  (Id. ¶ 8.)

At sentencing, the Court denied the Defendant's request for a variance based on the seriousness of the offense conduct, his prior arrests for similar conduct in Florida, the fact that he committed the offense conduct while on state probation, his lack of a single instance of legitimate employment despite his having a high school diploma, and his disciplinary record at the BOP. (Sentencing Transcript, dkt. no. 502, at 8-9.)  Accordingly, Defendant was sentenced primarily to 51 months' incarceration. (Id. at 10.)

In addition to the BOP infractions the Court referred to at Defendant's sentencing--namely, refusal to obey an order from a BOP official and insolence toward a staff member--it appears that the very day before sentencing, Defendant had been found guilty after a BOP disciplinary hearing of a second incident of insolence toward a staff member and refusal to obey an order. (See Dkt. no. 841, Ex. E, at 1.)  Thereafter, at FCI Allenwood, he sustained two more serious infractions: in 2018, possession of an unlawful (although not dangerous) tool, and, in 2019, possession of a weapon, which he admitted was his.  (See id.)

Defendant is 31 years old and suffers from asthma, which is well controlled, intellectual disabilities, and mental disorders and has a prior history of smoking.  His medical records, filed under seal as Exhibits A-D to the Government's papers, indicate that, as of August 2017, he had used his albuterol inhaler only

3

twice in six weeks.  (Dkt. no. 841, Ex. A at 1.)  The records also indicate that Defendant's last asthma attack was a year before that, and no other attacks are indicated while in BOP custody.  (Id. at 11.)  Defendant's medical records also indicate that he engages in exceedingly vigorous exercise:  They note that in 2018, he suffered a cut above his eye which he described as having occurred "when I was going for the spin-move-lay up" while playing basketball.  (See dkt. no. 841, Ex. C at 20.)  In 2019, he was treated for a dislocated finger, also sustained while playing basketball.  (Id. at 9.)

On August 6, 2020, Defendant made a request for compassionate release to the Warden, which request was denied on September 1, 2020.  (See dkt. no 837 at 2.)

II. **Applicable Law**

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018).[1]  Under that provision, the Court may reduce Defendant's sentence if it finds that (1) "extraordinary and compelling

---

[1] A defendant may bring such motion after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  The Government does not dispute that this requirement is satisfied.

4

reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The relevant Guidelines policy statement counsels that a reduction also is not proper unless "[t]he defendant is not a danger to the safety of any other person or to the community."[2]

Under the First Step Act, the Court may exercise its "discretion in determining what are extraordinary circumstances."  United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020).  But a court's finding such circumstances merely permits a defendant's release--it does not mandate it.  See, e.g., United States v. Ebbers, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020); United States v. Israel, No. 05-CR-1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019).  Ultimately, "[t]he defendant has the burden to show he is entitled to a sentence reduction."  United States v. Lisi, 440 F. Supp. 3d 246, 249 (S.D.N.Y. 2020).

If the defendant establishes extraordinary or compelling circumstances, the Court must still consider the § 3553(a) sentencing factors "to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  Those factors include, inter alia, "(1)

---

[2] U.S.S.G. § 1B1.13; see also United States v. Jordan, No. 1:19-CR-478-GHW, 2020 WL 4195353, at *2 (S.D.N.Y. July 16, 2020) ("The relevant policy statement is U.S.S.G. § 1B1.13.").

the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."  Id. § 3553(a)(1)-(2).

### III. Discussion

First, Defendant has not sustained his burden of demonstrating "extraordinary and compelling" reasons for release.  He is a young man who suffers from a mild, well-controlled case of asthma which does not prevent him from participating in vigorous basketball.  His purported intellectual disabilities and mental health issues do not place him at higher risk for COVID-19 and do not seem to have affected his life, either in or out of the BOP.  Indeed, the Court notes that Defendant holds a high school diploma.

Second, even if Defendant had demonstrated "extraordinary and compelling" reasons for release, the § 3553(a) factors militate against release.  The same factors that the Court relied on in denying Defendant's request for a variance at sentencing--his prior arrests, his continued drug dealing as part of a violent street gang while on probation, his lack of any legitimate employment at any time in his life, and his pre-

6

sentence BOP disciplinary record--all demonstrate that, if released, Defendant would pose a danger to the community. Defendant's entire BOP disciplinary history only confirms this conclusion.

**IV. Conclusion**

For the reasons set out above, Defendant Guance's request for compassionate release, (dkt. no. 837), is DENIED.  The Clerk of the Court shall mail a copy of this order to Mr. Guance.

**SO ORDERED.**

Dated:     November 9, 2020
           New York, New York

*Loretta A. Preska*
_____
LORETTA A. PRESKA
Senior United States District Judge

7